# 23-7274

_____

## In the
## United States Court of Appeals
## For the Second Circuit



**Stephanie Kushner,**
*Plaintiff–Appellant,*

**Emöke Beickert,**
*Plaintiff*

v.

**New York City Department of Education,**
*Defendant–Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

*Attorney for Plaintiff-Appellant:*

STEVEN M. WARSHAWSKY
THE WARSHAWSKY LAW FIRM
118 North Bedford Road, Suite 100
Mount Kisco, New York 10549
T: (914) 864-3353
E: smw@warshawskylawfirm.com

# TABLE OF CONTENTS

Table of Contents ...................................................................... i

Table of Authorities................................................................. iii

Jurisdictional Statement........................................................... 1

Questions Presented and Summary of Argument.............................. 2

Statement of the Case ............................................................... 3

   A.  Nature of the Case .......................................................... 3

   B.  Statement of Facts ......................................................... 3

   C.  Proceedings Below...................................................... 10

Standard of Review ............................................................... 12

Argument............................................................................. 13

   A.  Legal Framework ........................................................ 13

   B.  The District Court Erred In Holding That Kushner
       Failed To Allege A Bona Fide Religious Belief........................ 16

      1.  Defendant Should Be Precluded From Challenging
          Kushner's Religious Belief On A Motion To Dismiss ......... 16

      2.  The District Court Improperly Construed The
          Complaint Against Kushner............................................... 20

      3.  The District Court Should Have Granted Kushner
          Leave To Amend The Complaint........................................... 24

C.   The District Court Erred In Holding That DOE Could
Not Accommodate Kushner Without Undue Hardship............ 25

1.   The District Court Brazenly Advocated On Behalf
Of Defendant........................................................................... 25

2.   Undue Hardship Is An Affirmative Defense That Is
Not Shown On The Face Of The Complaint ....................... 26

3.   The District Court Did Not Conduct A Fact-Specific
Inquiry Regarding Undue Hardship .................................... 29

4.   The District Court Erred In Declaring That Workplace
Safety Is Of "Absolute Importance" .................................... 31

Conclusion ........................................................................................ 33

Certificate of Compliance ................................................................ 34

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................12

*Baker v. Home Depot*, 445 F.3d 541 (2d Cir. 2006)..............................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................12

*Berlin v. Renaissance Rental Partners, LLC*,
723 F.3d 119 (2d Cir. 2013)............................................................1

*Billings v. Murphy*, No. 22-2010, 2024 WL 444727
(2d Cir. Feb. 6, 2024).....................................................................21

*Blake-McIntosh v. Cadbury Beverages, Inc.*, 3:96-CV-2554(EBB),
1999 WL 464529 (D. Conn. June 25, 1999) ...............................18

*Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*,
402 U.S. 313 (1971) ......................................................................30

*Broecker v. New York City Dept. of Educ.*, 585 F. Supp.3d 299
(E.D.N.Y. 2022) ............................................................................30

*Buon v. Spindler*, 65 F.4th 64 (2d Cir. 2023).......................................12

*Cosme v. Henderson*, 287 F.3d 152 (2d Cir. 2002) ...............................17

*D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441
(2d Cir. Nov. 17, 2023) .................................................................27

*DeVito v. Legacy Health*, 3:22-CV-1983-YY, 2024 WL 687943
(D. Or. Feb. 19, 2024) ..................................................................27

*Does 1-2 v. Hochul*, 632 F. Supp.3d 120 (E.D.N.Y. 2022)....................30

*Elmenayer v. ABF Freight Sys.*, 98-CV-4061(JG), 2001 WL 1152815,
(E.D.N.Y. Sept. 20, 2001) .............................................................17

*Giurca v. Bon Secours Charity Health Sys.*, No. 23-200,
2024 WL 763388 (2d Cir. Feb. 26, 2024) ....................................21

*Groff v. DeJoy*, 600 U.S. 447 (2023) .............................................*passim*

*Harper v. Virginia Dept. of Tax.*, 509 U.S. 86 (1993) ...........................15

*Havens v. James*, 76 F.4th 103 (2d Cir. 2023) ...................................23

*Holmes v. Grubman*, 568 F.3d 329 (2d Cir. 2009) ...............................20

*In re Nine West LBO Securities Lit.*, 87 F.4th 130 (2d Cir. 2023)........26

*Jamil v. Sessions*, 14-CV-2355(PKC), 2017 WL 913601
　　(E.D.N.Y. Mar. 6, 2017)....................................................................16

*Kane v. de Blasio*, 623 F. Supp.3d 339 (S.D.N.Y. 2022) .................30,31

*Kosakow v. New Rochelle Radiology Assocs.*, P.C.,
　　274 F.3d 706 (2d Cir. 2001)............................................................19

*Langer v. Hartland Bd. of Educ.*, 3:22-CV-1459(JAM),
　　2023 WL 6140792 (D. Conn. Sept. 20, 2023) ...........................23,24

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*,
　　797 F.3d 160 (2d Cir. 2015)............................................................24

*National Union Fire Ins. Co. of Pittsburgh v. UPS Supply Chain
　　Solutions, Inc.*, 74 F.4th 66 (2d Cir. 2023)....................................1

*New Hampshire v. Maine*, 532 U.S. 742 (2001)...................................19

*Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019) .................26

*Picinich v. United Parcel Serv.*, 321 F. Supp.2d 485
　　(N.D.N.Y. 2004) ...............................................................................17

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 1999)............17

*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977) ...........13,15

*United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015)....................18

*United States v. Seeger*, 380 U.S. 163 (1965)......................................22

*Vasquez v. City of New York*, 22-CV-5068(HG), 2024 WL 1348702
　　(E.D.N.Y. Mar. 30, 2024).................................................................24

*Ventresca-Cohen v. DiFiore*, 177 N.Y.S.3d 853, 77 Misc.3d 652
　　(Albany Supr. Oct. 26, 2022).........................................................28

*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021),
　　17 F.4th 368 (2d Cir. 2021) (clarifying) .......................................30

*Welsh v. United States*, 398 U.S. 333 (1970).......................................21

## STATUTES, REGULATIONS, RULES

42 U.S.C. § 2000e-2(a)(1)......................................................... 13
42 U.S.C. § 2000e(j) ................................................................. 13
29 C.F.R. § 1605.2(c)................................................................ 14
Fed. R. Civ. P. 15(a)(2) ........................................................... 24

## OTHER AUTHORITIES

https://www.whitehouse.gov/briefing-room/press-briefings/2021/02/03/press-briefing-white-house-covid-19-response-team-and-public-health-officials/ .................. 28

# JURISDICTIONAL STATEMENT

This is an appeal from a Memorandum and Order, entered September 25, 2023, of the U.S. District Court for the Eastern District of New York (Dora L. Irizarry, D.J.), granting Defendant's motion to dismiss Plaintiff Stephanie Kushner's claim in this Title VII action challenging the denial of religious accommodations to the New York City Department of Education's COVID-19 vaccination mandate. *See* J.A. 6, 51-63. The district court has jurisdiction over this action, which remains pending with respect to Plaintiff Emöke Beickert's claim, pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3) (Title VII). Kushner's notice of appeal was filed prematurely on October 5, 2023. *See* J.A. 6, 65. Partial final judgment subsequently was entered on October 25, 2023, *see* J.A. 6, 64, curing any jurisdictional defect. *See*, *e.g.*, *National Union Fire Ins. Co. of Pittsburgh v. UPS Supply Chain Solutions, Inc.*, 74 F.4th 66, 70-71 (2d Cir. 2023); *Berlin v. Renaissance Rental Partners, LLC*, 723 F.3d 119, 128 (2d Cir. 2013). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, because this is an appeal from a final decision of the district court.

## QUESTIONS PRESENTED
## AND SUMMARY OF ARGUMENT

1.    Whether the district court erred when it dismissed Plaintiff Stephanie Kushner's Title VII religious accommodation claim on the grounds that Kushner failed to allege a bona fide religious belief?

Yes.  The district court improperly construed the Complaint and made factual findings against Kushner.

2.    Whether the district court abused its discretion when it denied Kushner's request to file an amended complaint to provide a more detailed explanation of her religious objections to the COVID-19 vaccination policy?

Yes.  Fed. R. Civ. P. 15(a)(2) authorized Kushner's request.

3.    Whether the district court erred when it dismissed Kushner's Title VII religious accommodation claim on the grounds that Defendant could not have accommodated her without suffering an undue hardship?

Yes.  The district court failed to analyze this issue in accordance with *Groff v. DeJoy*, 600 U.S. 447 (2023), and improperly relied on inapposite caselaw that does not apply to Plaintiffs.

2

## STATEMENT OF THE CASE

### A.   Nature of the Case.

This is an action for religious discrimination in violation of Title VII of the Civil Rights Act of 1964 on the grounds that Defendant failed to reasonably accommodate Plaintiffs' sincerely held religious objections to a mandatory COVID-19 vaccination policy, wrongly denied their requested religious exemptions, and as a result illegally terminated their employment.  Plaintiffs are not challenging the legal validity of the underlying COVID-19 vaccination policy. Rather, Plaintiffs are asserting their individual right to a reasonable accommodation to the policy, which is guaranteed by Title VII.  There are two plaintiffs in this action, Emőke Beickert and Stephanie Kushner.  Defendant moved to dismiss with respect to Kushner's claim only.  Beickert's claim remains pending in the district court.

### B.   Statement of Facts.

The Complaint provides a detailed chronology of the events in this case.  The essential facts are as follows:

Kushner was employed by the New York City Department of Education (DOE) as a full-time special education teacher assigned to

Nathaniel Hawthorne Middle School in Bayside, New York.  J.A. 17-18
(¶¶ 45, 47).  On August 23, 2021, Kushner was notified that "[e]ffective
September 27, all DOE employees are required to provide proof that
they have received at least one dose of the COVID-19 vaccine."  J.A. 18
(¶ 49).  The teacher's union invoked impact bargaining over this issue,
which resulted in an arbitrator's decision establishing certain
procedures for requesting exemptions to the COVID-19 vaccination
policy and appealing denials of such exemptions.  *Id.* (¶¶ 49-50).

Kushner, who observes the Jewish faith, submitted a request for a
religious exemption on September 20, 2021.  J.A. 18-19 (¶¶ 51-52); J.A.
30 (copy of exemption letter).  Kushner's request was based on the
biblical teaching, "You should be very careful to protect your life"
(Deuteronomy 4:15), which Kushner explained means, "I must care for
my body and do nothing that I believe may jeopardize my health."  *Id.*
In her letter, Kushner further wrote "I believe longer term testing, as in
other vaccine or drug releases, is necessary to adequately assure that
the current vaccines are truly safe and effective ...."  *Id.*

On September 22, 2021 – a mere two days later – Kushner was
notified by form letter that her request for a religious exemption was

denied. The only reason given was that her application "failed to meet the criteria for a religious based accommodation," but no explanation was provided. J.A. 19 (¶ 53).

Kushner appealed this decision on September 23, 2021, pursuant to the arbitration decision that was then in place. In support of her appeal, Kushner emphasized that DOE "do[es] not have the right to deny me of my Constitutional right to practice my religious beliefs which are guaranteed by the First Amendment of the Constitution of the United States of America ... ." *Id.* (¶ 56). Kushner's appeal was denied by the arbitrator, without explanation, on September 28, 2021. *Id.* (¶ 57).

As alleged in the Complaint: DOE never engaged in a good faith interactive process with Kushner to determine whether or not her religious exemption should be granted. J.A. 21 (¶ 66). DOE never questioned or denied the sincerity of Kushner's religious objections to the COVID-19 vaccines. *Id.* (¶ 67). DOE never conducted an individualized review of Kushner's job site or job duties to determine if her religious objections to the COVID-19 vaccine could be reasonably accommodated. *Id.* (¶ 68).

On October 2, 2021, Kushner received an email from DOE stating that she was being placed on leave without pay (LWOP), and was prohibited from reporting to her school site on October 4 (Monday), "because you are not in compliance with the DOE's COVID-19 Vaccine Mandate." J.A. 20 (¶ 63).

On November 2, 2021, Kushner received an email from DOE explaining she had two options: (1) returning from LWOP by getting the vaccine or (2) extending LWOP with health insurance coverage through September 6, 2022, by waiving her legal rights. In the absence of either option, "the DOE will seek to unilaterally separate you from service beginning December 1, 2021." Kushner did not agree to either option. J.A. 21 (¶¶ 64-65).

On January 31, 2022, Kushner received an email from DOE informing her that her employment was terminated, effective February 11, 2022, for "failure to comply with the New York City Health Commissioner's Order requiring vaccination of all New York City Department of Education staff." J.A. 22 (¶ 73).

On January 10, 2022, Kushner filed a charge of discrimination against DOE with the U.S. Equal Employment Opportunity Commission (EEOC). J.A. 11 (¶ 11).

In its position statement responding to Kushner's charge, DOE did <u>not</u> dispute the validity or sincerity of Kushner's religious objections to the COVID-19 vaccines. J.A. 23 (¶ 77); *see* J.A. 44-50 (copy of position statement). Rather, the focus of DOE's defense was that "[a]llowing such employees to remain in school settings unvaccinated, even with other safeguards like masking and testing, would present an unacceptable risk to schoolchildren, staff, and others." J.A. 23 (¶ 78); J.A. 48 (p. 5).

Because Plaintiffs anticipated that this would be Defendant's defense in the lawsuit, the Complaint included allegations rebutting the supposed risk that an unvaccinated teacher, like Kushner, would pose to others. These allegations included:

- During the September 2020 to June 2021 school year, Kushner followed rigorous COVID-19 safety protocols, including: She completed a health questionnaire daily; she wore a mask during the entire workday (she voluntarily double-masked); and she socially

7

distanced (6 feet) from students and colleagues, to the extent feasible. She also regularly used hand sanitizer and wiped down computers, telephones, and whiteboard markers with sanitizing wipes. She also voluntarily tested for COVID-19 each time her Principal emailed her that she had been in close contact with another person who tested positive for COVID-19. J.A. 21-22 (¶ 70). Beginning in September 2021, because she was unvaccinated, she was required test for COVID-19 once per week. *Id.*

• It would not have caused an undue risk to students, staff, and others of catching COVID-19 to allow Kushner to continue following the same health and safety protocols – testing, masking, social distancing, and sanitizing – that were in place before DOE announced its mandatory vaccination policy. Prior to the mandatory vaccination policy, these precautions were deemed adequate to mitigate the risk of catching or transmitting COVID-19. J.A. 23 (¶ 79).

• Nothing changed about the dangers of COVID-19 in the Fall 2021 to render these precautions ineffective. On the contrary, rates of hospitalizations and deaths under the "Delta" variant were declining by October 2021, and the "Omicron" variant, which became dominant in

8

December 2021, is widely acknowledged to be *less virulent* than previous waves have been. *Id.* (¶ 80).

- It is possible that unvaccinated teachers who are regularly tested for COVID-19 will be more likely to know they are infected and potentially contagious – and therefore can quarantine and be less likely to transmit the virus unknowingly – than vaccinated teachers who do not undergo regular testing. J.A. 24 (¶ 82).

- It was well-established by the Fall 2021 that the available COVID-19 vaccines do not prevent the transmission of the virus. *Id.* (¶ 83).

- On August 5, 2021, during a televised interview with CNN's Wolf Blitzer, then-CDC Director Dr. Rochelle Walensky stated that the COVID-19 vaccines "continue to work well for Delta, with regard to severe illness and death – they prevent it. But what they can't do anymore is prevent transmission." *Id.* (¶ 84).

- For the vast majority of people who catch COVID-19, there is only a small risk of serious illness and an even smaller risk of death. *Id.* (¶ 87).

- Middle school students are in the age group with the lowest risk of becoming seriously ill or dying from COVID-19. J.A. 25 (¶ 91).

- In short, there is no objective, scientific basis for DOE to argue that granting Plaintiffs a religious exemption to the COVID-19 vaccination policy would have posed an "unacceptable risk" to students, staff, and others of becoming sick from COVID-19. This is pure speculation and fear-mongering. *Id.* (¶ 92).

## C. <u>Proceedings Below.</u>

The Complaint was filed on September 2, 2022, in the United States District Court for the Eastern District of New York. In Count One, Plaintiffs assert a Title VII claim for failure to accommodate on behalf of Beickert. J.A. 26. In Count Two, Plaintiffs assert a Title VII claim for failure to accommodate on behalf of Kushner. J.A. 27.

The case was assigned to District Judge Dora L. Irizarry. On December 5, 2022, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) with respect to Kushner's claim only. J.A. 3, 31. Defendant's motion was fully briefed on December 30, 2022. J.A. 4. While the motion was pending, discovery proceeded with both plaintiffs. J.A. 4-5 (docket entries dated 12/06/2022, 4/27/2023, 5/19/2023).

The district court issued its Memorandum and Order on September 25, 2023.  J.A. 6.

After summarizing the relevant facts and applicable legal standards, the district court first held that "Kushner fails to allege plausibly a bona fide religious belief." J.A. 58 (Op. at 8).  The court disregarded Kushner's reference to Deuteronomy 4:15, despite acknowledging that "it is not the Court's role to question Kushner's interpretation of it." J.A. 57 (Op. at 7).  The court found that Kushner's "true concerns" were the safety and efficacy of the COVID-19 vaccines, which "do not qualify as a proper basis for a religious exemption."  J.A. 58 (Op. at 8).  The district court next held that "DOE could not accommodate Kushner without suffering an undue hardship."  J.A. 59 (Op. at 9).  On this issue, the court engaged in a lengthy, tendentious argument, ignoring the allegations in the Complaint, while relying on numerous inapposite cases, ultimately concluding that "Kushner's unvaccinated presence would have ... creat[ed] a health and safety risk." J.A. 61 (Op. at 11).

This appeal followed.

11

## STANDARD OF REVIEW

This Court summarized the standard of review governing appeals from a 12(b)(6) motion to dismiss in *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023):

> We review de novo a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiff. [citation omitted] To survive dismissal, the pleadings must contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) [parallel citation omitted], *i.e.*, the pleaded facts must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) [parallel citation omitted].

Importantly, "at the motion to dismiss stage, the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to nudge[] their claims across the line from conceivable to plausible."  65 F.4th at 85 (italics in original) (internal quotation marks and citations omitted).

## ARGUMENT

### A. Legal Framework.

Title VII declares it unlawful, *inter alia*, "for an employer ... to discharge any individual ... because of such individual's ... religion ... ." 42 U.S.C. § 2000e-2(a)(1). Title VII defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). As the Supreme Court recognized nearly 50 years ago: "The intent and effect of this definition was to make it an unlawful employment practice ... for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees ...." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977); *see also Groff v. DeJoy*, 600 U.S. 447, 453-54 (2023) ("Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business.") (internal quotation marks and citation omitted).

13

To make out a prima facie case of failure to accommodate under Title VII, employees "must show that (1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (internal quotation marks and citation omitted).

Once a prima facie case is established by the employee, the employer "must offer [him or her] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Baker*, 445 F.3d at 546 (citation omitted); *see also* 29 C.F.R. § 1605.2(c) ("After an employee ... notifies the employer ... of his or her need for a religious accommodation, the employer ... has an obligation to reasonably accommodate the individual's religious practices. A refusal to accommodate is justified only when an employer ... can demonstrate that an undue hardship would in fact result from each available alternative method of accommodation.").

In *Groff v. DeJoy*, the Supreme Court explained that "undue hardship" under Title VII means "a burden [that] is substantial in the

14

overall context of an employer's business."  600 U.S. at 468; *id.* at 470 ("an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business").  In *Groff*, the Supreme Court rejected the "more than de minimis" standard previously applied by lower courts as an erroneous interpretation of the Court's decision in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977).  Accordingly, the "more than de minimis" standard does not apply to the case at bar. *See Harper v. Virginia Dept. of Tax.*, 509 U.S. 86, 90 (1993) ("this Court's application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision").

Determining whether accommodating an employee's religious beliefs and practices would constitute an undue hardship requires a "fact-specific inquiry."  *Groff*, 600 U.S. at 468.  "[C]ourts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer."  *Groff*, 600 U.S. at 470-71 (internal quotation marks and citation omitted).

15

**B.** **The District Court Erred In Holding That Kushner Failed To Allege A Bona Fide Religious Belief.**

The district court first held that Kushner failed to allege a bona fide religious belief. This holding was error and should be reversed.

**1.** **Defendant Should Be Precluded From Challenging Kushner's Religious Belief On A Motion To Dismiss.**

As a threshold matter, Defendant should be precluded from challenging Kushner's religious belief on a motion to dismiss, because DOE failed to dispute the validity or sincerity of Kushner's religious objections to the COVID-19 vaccines either in response to her request for a religious exemption or in its position statement to the EEOC. *See* J.A. 19, 23 (¶¶ 53, 77). The district court did not address this argument in its decision.

Although not included in the statute or regulations, courts in this circuit have imposed an "interactive process" requirement for Title VII religious accommodation claims, analogous to ADA claims. This is a *mutual* requirement: "The process of finding a reasonable accommodation is 'intended to be an interactive process in which both the employer and the employee participate'." *Jamil v. Sessions*, 14-CV-2355(PKC), 2017 WL 913601, at *10 (E.D.N.Y. Mar. 6, 2017) (quoting

16

*Elmenayer v. ABF Freight Sys.*, 98-CV-4061(JG), 2001 WL 1152815, at *5 (E.D.N.Y. Sept. 20, 2001) (citation omitted)); *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) ("In formulating such an accommodation, both the employer and employee should remain flexible, with an eye toward achieving a mutually acceptable adjustment."). When a party – even an employer – fails to engage in the interactive process, such failure precludes judgment as a matter of law in favor of that party. *Cf. Picinich v. United Parcel Serv.*, 321 F. Supp.2d 485, 511 (N.D.N.Y. 2004) (ADA case) ("Failure of an employer to act in good faith will preclude summary judgment against an employee on a claim of failure to accommodate.") (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 318-19 (3d Cir. 1999)).

Here, DOE did not engage in the interactive process with respect to Kushner's request for a religious exemption, but simply rejected her application, without explanation, by form letter. J.A. 19 (¶ 53). Despite being on notice that Kushner was asserting a religious objection to the COVID-19 vaccination policy, DOE did not ask her (through either a written questionnaire or personal interview) for more information about the nature of her religious objections to the COVID-19 vaccines. To the

17

extent that Kushner – who is neither an attorney nor a theologian – did not articulate her religious objections adequately in her exemption letter, the fault lies with DOE for not following up with her. Accordingly, DOE's failure to engage in the interactive process should preclude Defendant from arguing on a motion to dismiss that Kushner failed to articulate a bona fide religious objection to the COVID-19 vaccination policy.

Defendant likewise should be precluded because DOE failed to dispute the validity or sincerity of Kushner's religious objection in its position statement to the EEOC, which focused solely on the undue hardship defense. *See* J.A. 44-50. Because the EEOC is a quasi-judicial body, *see*, *e.g.*, *Blake-McIntosh v. Cadbury Beverages, Inc.*, 3:96-CV-2554(EBB), 1999 WL 464529, at *7 (D. Conn. June 25, 1999), the doctrines of judicial estoppel and equitable estoppel apply to statements made by a party in an EEOC proceeding.

"Judicial estoppel is 'invoked by a court at its discretion,' and is designed to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *United States v. Apple, Inc.*, 791 F.3d 290, 337 (2d Cir.

18

2015) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). "The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs.*, P.C., 274 F.3d 706, 725 (2d Cir. 2001).

Here, Defendant is asserting clearly inconsistent positions to the unfair detriment of Kushner. Quite frankly, Kushner relied on DOE's silence in its position statement regarding her religious beliefs when drafting the Complaint in this action. As a result, Kushner pleaded the facts based on the existing documentary record. If DOE had challenged the bona fides of her religious beliefs in its position statement, Kushner would have provided a fuller explanation of her religious objections to the COVID-19 vaccines in the Complaint. Notably, Defendant did not move to dismiss Beickert's claim, presumably because she included a more detailed discussion of her religious objections in her original exemption request, although it too was denied by form letter a few days later. J.A. 12-13 (¶¶ 21-23).

19

In short, Kushner was unfairly prejudiced by Defendant's sandbagging – subjecting her to an otherwise avoidable motion to dismiss – which should not be countenanced by this Court.

### 2. The District Court Improperly Construed The Complaint Against Kushner.

In holding that Kushner failed to allege a bona fide religious belief, the district court blatantly violated the fundamental principle that on a motion to dismiss, the court must "construe plaintiffs' complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiffs' favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).

When the Complaint is construed fairly in Kushner's favor, as it must be on a motion to dismiss, she has alleged a valid religious objection to the COVID-19 vaccines under Jewish law – "You should be very careful to protect your life" (Deuteronomy 4:15) – which is directly analogous to the familiar objection in the Christian tradition that "my body is the temple of the Holy Spirit and I do not want to knowingly harm it by accepting an unclean vaccine." *See* J.A. 12 (¶ 21) (quoting from Beickert's religious exemption letter). As such, this is a plausible

religious belief that satisfies Plaintiff's "minimal burden" to allege a prima facie case. *See Giurca v. Bon Secours Charity Health Sys.*, No. 23-200, 2024 WL 763388, at *1 (2d Cir. Feb. 26, 2024); *Billings v. Murphy*, No. 22-2010, 2024 WL 444727, at *3 (2d Cir. Feb. 6, 2024).

Granted, Kushner's original exemption letter contained both religious and non-religious elements. But the mere fact that a plaintiff seeking an accommodation expresses a mixture of religious and non-religious concerns does not mean she does not have valid religious beliefs or that she is disqualified from protection under Title VII.

Although the Supreme Court has not addressed this issue in the Title VII context, the Court's seminal conscientious objector cases underscore that a person can assert a valid religious objection even if she also holds strong secular opinions. *See Welsh v. United States*, 398 U.S. 333, 342 (1970) (plurality opinion) (explaining that defendant asserted valid religious objection to military draft although objection "was undeniably based in part on his perception of world politics"; conscientious objector status does not "exclude those who hold strong beliefs about our domestic and foreign affairs or even those whose conscientious objection to participation in all wars is founded to a

substantial extent upon considerations of public policy"); *see also id.* (explaining that in *United States v. Seeger*, 380 U.S. 163 (1965), "Seeger's views had a substantial political dimension"). Given the broad definition of "religion" under Title VII, the same result should hold in reasonable accommodation cases. Consequently, just because Kushner's exemption letter mentioned the need for "longer term testing" of the COVID-19 vaccines does not negate her religious objection to the policy based on Deuteronomy 4:15, which must be accepted as true at this stage of the proceeding.

In the case at bar, the district court disregarded Kushner's reference to Deuteronomy 4:15, despite acknowledging that "it is not the Court's role to question Kushner's interpretation of it." J.A. 57 (Op. at 7). Nevertheless, instead of accepting that Kushner was asserting a religious objection to DOE's COVID-19 vaccination policy, the district court *made factual findings* as to Kushner's "true concerns," stating that Kushner's objection to the vaccination policy "actually is based on her concerns about the safety and efficiency [efficacy] of COVID-19 vaccines." J.A. 58 (Op. at 8). "The district court departed from its role at the motion-to-dismiss stage by impermissibly drawing inferences

against [Kushner]." *Havens v. James*, 76 F.4th 103, 117 (2d Cir. 2023). This was reversible error.

The proper 12(b)(6) analysis of a plaintiff's religious accommodation claim is illustrated in *Langer v. Hartland Board of Education*, 3:22-CV-1459(JAM), 2023 WL 6140792 (D. Conn. Sept. 20, 2023). The plaintiff in *Langer* was a public elementary school teacher who was fired after she refused to comply with the state's COVID-19 vaccination-or-test requirement. *Id.* at *1. She asserted constitutional and statutory challenges to her termination. With respect to her statutory religious accommodation claims, the district court acknowledged that there were reasons for the defendant "to be skeptical of Langer's claim that she has a religious objection to both the COVID-19 vaccine and the related testing requirements," but held that such doubts "do not warrant dismissal of her complaint at the pleading stage." *Id.* at *6. As the court explained:

> The fact that Langer – in light of her shaky articulation of her religious objection and the vehemence of her *non*-religious objections – may face an uphill battle to prove that she had a sincerely held religious belief that conflicted with the vaccinate-or-test requirements does not mean that I should grant

23

the Board's motion to dismiss without further discovery and inquiry.

*Id.* at *7; *see also Vasquez v. City of New York*, 22-CV-5068(HG), 2024 WL 1348702, at *6 (E.D.N.Y. Mar. 30, 2024) ("Although plaintiff's allegations concerning his religious beliefs strike the Court as somewhat nebulous, whether he sincerely holds them is a factual question inappropriate for resolution on a motion to dismiss.").

In sum, the district court erred in holding that Kushner failed to allege a bona fide religious belief.

### 3. The District Court Should Have Granted Kushner Leave To Amend The Complaint.

In her opposition to Defendant's motion to dismiss, Kushner requested leave to file an amended complaint providing a more detailed explanation of her religious objections to the COVID-19 vaccines. Federal Rule of Civil Procedure 15(a)(2) provides, in relevant part, that "a party may amend its pleading only with ... the court's leave" and "[t]he court should freely give leave when justice so requires." This is a "liberal" and "permissive" standard that "is consistent with our strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190 (2d Cir.

24

2015) (internal quotation marks and citations omitted). The district court denied the motion to amend on grounds of futility, "since the DOE would have suffered an undue hardship by offering Kushner an accommodation." J.A. 63 (Op. at 13). Because the district court's undue hardship analysis was fatally flawed, as demonstrated next, there was no such futility. The district court abused its discretion in denying Kushner's request to file an amended complaint.

### C. The District Court Erred In Holding That DOE Could Not Accommodate Kushner Without Undue Hardship.

The district court next held that DOE could not accommodate Kushner without suffering an undue hardship. This holding was error and should be reversed.

### 1. The District Court Brazenly Advocated On Behalf Of Defendant.

If the district court blatantly violated the applicable standard of review in construing the Complaint against Kushner with respect to her bona fide religious belief, it crossed the line into brazen advocacy on behalf of Defendant with respect to undue hardship. *See* J.A. 57-63. Indeed, the district court's decision reads like an impassioned diatribe against "anti-vaxxers" rather than an objective analysis whether or not

Kushner *plausibly alleged* her reasonable accommodation claim. Whatever the merits of Defendant's undue hardship defense, "it is not the district court's province to dismiss a plausible complaint because it is not as plausible as the defendant's theory. The test is whether the complaint is plausible, not whether it is less plausible than an alternative explanation." *Palin v. New York Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019). By improperly deciding undue hardship as a matter of law, the district court preempted Kushner's (and ultimately Beickert's) right to develop and present evidence in support of her position, and usurped the jury's right to decide which party should prevail. This was reversible error.

### 2. Undue Hardship Is An Affirmative Defense That Is Not Shown On The Face Of The Complaint.

It is well-established that "[a] district court may grant a motion to dismiss for failure to state a claim on the basis of an affirmative defense only when facts supporting the defense appear on the face of the complaint." *In re Nine West LBO Securities Lit.*, 87 F.4th 130, 142 (2d Cir. 2023) (citations omitted). "The defense of undue hardship may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) ... if the

defense appears on the face of the complaint." *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (internal quotation marks and citation omitted).

Here, the district court completely disregarded the allegations in the Complaint showing that an unvaccinated teacher's risk of spreading COVID-19 to others could be adequately mitigated and, therefore, would pose neither an unreasonable risk nor an undue hardship. *See* J.A. 23-25 (¶¶ 79-92); *see DeVito v. Legacy Health*, 3:22-CV-1983-YY, 2024 WL 687943, at *5 (D. Or. Feb. 19, 2024) ("This pleading does not, on its face, establish that the burden of allowing Plaintiff to continue working as she had prior to the vaccine mandate would have been a substantial burden in the context of Defendant's business.").

This may be a contentious issue, but Plaintiffs' position is at least plausible – indeed, during a White House press briefing on February 3, 2021, during the height of the pandemic, then-CDC Director Rochelle Walensky stated:

> That said, I want to be very clear about schools, which is: Yes, ACIP has put teachers in the 1b category, the category of essential workers. But I also want to be clear that there is increasing data to suggest that schools can safely reopen and that that *safe reopening*

> *does not suggest that teachers need to be vaccinated in order to reopen safely.*
>
> So while we are implementing the criteria of the Advisory Committee and of the state and local guidances to get vaccination across these eligible communities, I would also say that safe reopening of schools is not – that *vaccination of teachers is not a prerequisite for safe reopening of schools.* (italics added)[1]

Plaintiff further notes that DOE's position regarding the dangers posed by unvaccinated employees was inconsistent with the positions of other NYC agencies (e.g., DSNY granted more than 300 religious exemptions) as well as the New York State Unified Court System, which granted more than 500 religious exemptions. *See Ventresca-Cohen v. DiFiore*, 177 N.Y.S.3d 853, 858, 77 Misc.3d 652, 657 (Albany Supr. Oct. 26, 2022). Contrary to the district court's view, there was no one-size-fits-all scientific or medical "consensus" on this issue.

Although there was no basis to find undue hardship on the face of the Complaint, the district court improperly credited DOE's ipse dixit that unvaccinated teachers could not perform their jobs safely. This was reversible error.

---

[1]    *See* https://www.whitehouse.gov/briefing-room/press-briefings/2021/02/03/press-briefing-white-house-covid-19-response-team-and-public-health-officials/.

### 3. The District Court Did Not Conduct A Fact-Specific Inquiry Regarding Undue Hardship.

Despite issuing its decision after the Supreme Court's groundbreaking decision in *Groff v. DeJoy*, 600 U.S. 447 (2023), the district court failed to conduct the requisite "fact-specific inquiry," *id.* at 468, before holding that DOE could not accommodate Kushner without undue hardship. This was reversible error.

As the Supreme Court directed in *Groff*: "[C]ourts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Id.* at 470-71 (internal quotation marks and citation omitted). Of course, such an individualized analysis could not be performed in the case at bar, because no such evidence was presented to the court as part of the motion to dismiss. Defendant's EEOC position statement, J.A. 44-50, is legal argument, not evidence, and offers no factual support for its contention that unvaccinated employees "present an unacceptable risk to schoolchildren, staff, and others." J.A. 48-50.

Instead, the district court improperly relied on holdings *in other cases* to support its decision against Kushner. The four main cases relied on by the district court were *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021), 17 F.4th 368 (2d Cir. 2021) (clarifying); *Broecker v. New York City Department of Education*, 585 F. Supp.3d 299 (E.D.N.Y. 2022); *Does 1-2 v. Hochul*, 632 F. Supp.3d 120 (E.D.N.Y. 2022); and *Kane v. de Blasio*, 623 F. Supp.3d 339 (S.D.N.Y. 2022).

None of these cases is on point. These cases involved challenges to COVID-19 vaccine mandates, not individual requests for reasonable accommodations. Whatever these courts may have decided on the issues before them (not applicable here), they did <u>not</u> decide that unvaccinated teachers pose an undue hardship *as a matter of law*, regardless of the circumstances in the case at hand.

Furthermore, any factual findings these courts made (in the context of preliminary injunction proceedings) do not bind Plaintiffs, who were not parties to these actions. *See*, *e.g.*, *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 329 (1971) ("Some litigants – those who never appeared in a prior action – may not be collaterally estopped without litigating the issue. They have never had a chance to

present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position.").

Lastly, these cases were decided before the Supreme Court's decision in *Groff*. To the extent these cases engaged in an undue hardship analysis, they relied on the "more than de minimis" standard rejected in *Groff*. *See Kane*, 623 F. Supp.3d at 363. Accordingly, the district court should not have relied on these decisions in dismissing Kushner's claim. This was reversible error.

### 4. The District Court Erred In Declaring That Workplace Safety Is Of "Absolute Importance."

In its decision, the district court declared: "It is beyond cavil that safety within any work environment, especially an educational work environment, is of absolute importance." J.A. 61 (Op. at 11).[2] Notably, the court did not cite any statutory or caselaw support for this bold proposition – which would render meaningless an employee's right to a reasonable accommodation under Title VII anytime the employer

---

[2] The district court's emphasis on "educational work environments" underscores how it was engaging in advocacy, not objective analysis, in analyzing the case at bar. Quite obviously, many non-educational work environments present an even greater need for "safety," *e.g.*, nursing homes, construction sites, coal mines, etc.

argues that an accommodation would make the workplace "less safe." If safety is of "absolute importance," then it always will outweigh an employee's right to a reasonable accommodation – no matter how minimal the alleged risk might be. Plainly, this was the lens through which the district court evaluated the undue hardship issue here. But this is not the law. Indeed, the district court's formulation effectively revives the "more than de minimis" standard rejected in *Groff*.

As the Supreme Court explained in *Groff*, undue hardship "means that the requisite burden, privation, or adversity must rise to an 'excessive' or 'unjustifiable' level." 600 U.S. at 469. Consequently, "an employer must show that the burden of granting an accommodation would result in *substantial* increased costs in relation to the conduct of its particular business." *Id.* at 470 (italics added). Whether couched in terms of costs or risk, there was no basis for the district court to hold *as a matter of law* that DOE could not accommodate Kushner without suffering undue hardship. This was reversible error.

## CONCLUSION

For the reasons set forth above, the plaintiff-appellant requests that this Court issue an order (i) vacating the district court's Memorandum and Order entered September 25, 2023; (ii) vacating the Partial Final Judgment entered October 25, 2023; (iii) remanding with directions to enter an order denying Defendant's motion to dismiss or, alternatively, allowing Kushner to file an amended complaint; and (iv) remanding for further proceedings. The plaintiff-appellant also requests that the Court award her the costs of this appeal.

Dated: April 10, 2024

Respectfully submitted,

/s/ *Steven M. Warshawsky*

By: _____

STEVEN M. WARSHAWSKY
The Warshawsky Law Firm

*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION,
## TYPEFACE REQUIREMENTS, AND
## TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 21(d) because this brief has been prepared using Microsoft Word 2007 with Century Schoolbook 14-point font (12-pont font for footnotes) and contains no more than 6,300 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

April 10, 2024

*Steven M. Warshawsky*

_____
STEVEN M. WARSHAWSKY
The Warshawsky Law Firm

*Attorney for Plaintiff-Appellant*

34