# 23-7274

## United States Court of Appeals
## for the Second Circuit

STEPHANIE KUSHNER,

*Plaintiff-Appellant,*

EMÖKE BEICKERT,

*Plaintiff,*

*against*

NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of New York

**BRIEF FOR APPELLEE**

MURIEL GOODE-TRUFANT
*Acting Corporation Counsel
of the City of New York*
Attorney for Appellee
100 Church Street
New York, New York 10007
212-356-2067 or -1852
jtownsen@law.nyc.gov

RICHARD DEARING
DEBORAH A. BRENNER
JESSE A. TOWNSEND
 *of Counsel*

July 10, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................iv

PRELIMINARY STATEMENT .................................................................. 1

ISSUE PRESENTED FOR REVIEW ......................................................... 3

STATEMENT OF THE CASE ................................................................... 3

    A. The well-litigated requirement that New York City public-school employees be vaccinated against COVID-19, subject to valid exceptions ......................................................... 3

        1. The initial order of the Commissioner of Health requiring vaccination of public-school employees ................. 3

        2. The arbitration award addressing the impact of the vaccination order on public-school teachers .......................... 8

        3. The lawsuits that have unsuccessfully sought to stop implementation of the vaccination requirement ................. 10

        4. The policy's lifting in February 2023, in response to decreasing rates of severe COVID-19 outcomes .................. 12

    B. Kushner's deficient claim of religious discrimination ............. 13

        1. Kushner's request for an exemption from the vaccination requirement, based on her personal belief that the vaccines needed more testing ................................. 13

        2. The district court's dismissal of Kushner's claim on multiple grounds ........................................................ 15

STANDARD OF REVIEW AND SUMMARY OF ARGUMENT .......... 17

ARGUMENT ........................................................................................ 21

i

# TABLE OF CONTENTS (cont'd)

Page

AS THE DISTRICT COURT SOUNDLY DETERMINED, KUSHNER'S COMPLAINT FAILED TO STATE A CLAIM ........ 21

A. The district court correctly dismissed Kushner's complaint due to the nature of her stated objection to the vaccination requirement. ........................................................... 22

  1. As a matter of law, Kushner's stated objection to COVID-19 vaccines is not religious in nature. ..................... 22

  2. Kushner's procedural arguments cannot save her deficient pleading. .................................................. 29

      a. DOE conducted an adequate interactive process for Kushner's request, and any alleged failure to so would not warrant reversal in any event. ................................................................ 30

      b. The record does not support Kushner's claims of judicial or equitable estoppel. ............................. 32

      c. The district court providently denied Kushner's bare-bones request to amend her complaint. ............................................................ 36

B. In any event, the district court also correctly held that accommodating Kushner's objection would have placed an undue hardship on DOE. ..................................................... 37

  1. The undue hardship on DOE in granting Kushner's request was readily apparent. ............................................. 37

  2. Kushner's arguments on appeal do not undermine the hardships DOE would have faced in accommodating her. .................................................................... 41

# TABLE OF CONTENTS (cont'd)

**Page**

CONCLUSION ........................................................................ 47

CERTIFICATE OF COMPLIANCE ..................................... 48

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................ 17, 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................ 17, 21

*Broecker v. N.Y.C. Dep't of Educ.*,
No. 23-655, 2023 U.S. App. LEXIS 30076 (2d Cir. Nov. 13,
2023) ............................................................................................ 10

*Bryan v. Bd. of Educ.*,
222 A.D.3d 473 (1st Dep't 2023) ............................................ 12

*Caviezel v. Great Neck Pub. Sch.*,
701 F. Supp. 2d 414 (E.D.N.Y. 2010), *aff'd*, 500 F. App'x
16 (2d Cir. 2012) ................................................................ 24, 27

*Check v. N.Y.C. Dep't of Educ.*,
13-cv-791, 2013 U.S. Dist. LEXIS 71124 (E.D.N.Y. 2013),
*aff'd sub nom. Phillips v. City of N.Y.*, 775 F.3d 538 (2d
Cir. 2015) .................................................................................... 24

*Clark v. All Acquisition, LLC*,
886 F.3d 261 (2d Cir. 2018) ................................................ 32, 34

*Clarke v. Bd. of Educ.*,
213 A.D.3d 548 (1st Dep't 2023) ............................................ 11

*Cosme v. Henderson*,
287 F.3d 152 (2d Cir. 2002) .................................................... 37

*D'Cunha v. Northwell Health Sys.*,
23-476, 2023 U.S. App. LEXIS 30612 (2d Cir. Nov. 17,
2023) ..................................................... 21, 31, 34, 35, 38

iv

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*DeVito v. Legacy Health*,
  3:22-cv-01983, 2024 U.S. Dist. LEXIS 28475 (D. Or. Feb.
  19, 2024) ................................................................................... 25, 26

*Fallon v. Mercy Catholic Medical Center*,
  877 F.3d 487 (3d Cir. 2017) .................................. 24, 25, 26, 27, 28, 37

*Friedman v. Clarkston Cent. Sch. Dist.*,
  75 F. App'x 815 (2d Cir. 2003) ........................................................... 24

*Greenbaum v. N.Y.C. Transit Auth.*,
  21-1777, 2022 U.S. App. LEXIS 22589 (2d Cir. Aug. 15,
  2022) ................................................................................................ 30

*Groff v. DeJoy*,
  600 U.S. 447 (2023) ...................................................................... 38, 46

*Hogue v. Bd. of Educ.*,
  220 A.D.3d 416 (1st Dep't 2023) ....................................................... 12

*Int'l Soc'y for Krishna Consciousness, Inc. v. Barber*,
  650 F.2d 430 (2d Cir. 1981) ........................................................ 22, 23

*Kane v. de Blasio*,
  19 F.4th 152 (2d Cir. 2021) ............................................. 10, 11, 15, 30

*Kane v. de Blasio*,
  623 F. Supp. 3d 339 (S.D.N.Y. 2022) .............................................. 8, 45

*Keil v. City of N.Y.*,
  No. 21-3043, 2022 U.S. App. LEXIS 5791 (2d Cir. Mar. 3,
  2022) ..................................................................................... 10, 11, 30

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
  274 F.3d 706 (2d Cir. 2001) ........................................................ 34, 35

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Lebowitz v. Bd. of Educ.*,
    220 A.D.3d 537 (1st Dep't 2023) ...................................... 12, 39, 40, 41

*Loiacono v. Bd. of Educ.*,
    Index No. 154875/22, 2022 N.Y. Misc. LEXIS 9382 (Sup.
    Ct. July 11, 2022) ................................................................. 43

*Lynch v. Bd. of Educ.*,
    221 A.D.3d 456 (1st Dep't 2023) ............................................ 12, 30, 38

*Maniscalco v. N.Y.C. Dep't of Educ.*,
    No. 21-2343, 2021 U.S. App. LEXIS 30967 (2d Cir. Oct.
    15, 2021) ............................................................................. 10

*Marsteller v. City of N.Y.*,
    217 A.D.3d 543 (1st Dep't 2023) ............................................ 30

*Mason v. Gen. Brown Cent. Sch. Dist.*,
    851 F.2d 47 (2d Cir. 1988) ........................................ 23, 24, 27, 28, 37

*McBride v. BIC Consumer Prods. Mfg.*,
    583 F.3d 92 (2d Cir. 2009) ............................................... 31, 32

*Mirand v. City of N.Y.*,
    84 N.Y.2d 44 (1994) ........................................................ 46

*O'Reilly v. Bd. of Educ.*,
    213 A.D.3d 560 (1st Dep't 2023) ........................................... 11

*Passarella v. Aspirus*, *Inc.*,
    22-cv-287, 2023 U.S. Dist. LEXUS 40958 (W.D. Wis. Mar.
    10, 2023) .................................................................. 25, 26, 27

*Perkins v. City of N.Y.*,
    22-196, 2023 U.S. App. LEXIS 1719 (2d Cir. Jan. 24,
    2023) ................................................................................. 31

vi

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Petermann v. Aspirus, Inc.*,
22-cv-332, 2023 U.S. Dist. LEXIS 53779 (W.D. Wis. Mar. 28, 2023)................................................................................. 26

*Porat v. Lincoln Tower Cmty. Ass'n*,
464 F.3d 274 (2d Cir. 2006) ................................... 19, 36, 37

*Robinson v. Concentra Health Servs.*,
781 F.3d 42 (2d Cir. 2015) ........................................... 32

*Roth v. CitiMortgage Inc.*,
756 F.3d 178 (2d Cir. 2014) ........................................ 18

*Stadnick v. Lima*,
861 F.3d 31 (2d Cir. 2017) ........................................ 17

*United States v. Apple, Inc.*,
791 F.3d 290 (2d Cir. 2015) ................................... 33, 34

*United States v. Swartz Fam. Tr.*,
67 F.4th 505 (2d Cir. 2023) ........................................ 33

*We the Patriots USA, Inc. v. Hochul*,
17 F.4th 266 (2d Cir. 2021), *op. clarified*, 17 F.4th 368, 370 (2d Cir. 2021)............................................... 3, 38

*Wisconsin v. Yoder*,
406 U.S. 205 (1972)................................................. 23

## Statutes and Rules

Civil Rights Act of 1964 Title VII, 42 U.S.C. § 2000e-2
.................................................................................. 15

24 RCNY § 3.01(d) ....................................................... 6

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

## Other Authorities

Center for Education Statistics, *The Condition of Education 2024 at a Glance,* https://nces.ed.gov/programs /coe/ataglance (last visited July 10, 2024).....................5, 39

Center for Education Statistics, *Recovery from the Coronavirus Pandemic in K-12 Education,* https://nces.ed.gov/programs/coe/indicator/toa/k-12-covid-recovery?tid=300 (last visited July 10, 2024).....................39

Eliza Shapiro, *N.Y.C. Will Eliminate Remote Learning for Next School Year*, N.Y. Times (updated Aug. 23, 2021), https://perma.cc/FSU9-GHMZ...............................6

*From Shutdown to Reopening: A Timeline of N.Y.C. Schools Through the Pandemic*, N.Y. Times (Sept. 13, 2021), https://www.nytimes.com/2021/09/13/world/reopening-timeline-nyc-schools.html.......................4, 41, 42

*N.Y.C. to Close Schools, Restaurants and Bars*, N.Y. Times (Mar. 15, 2020), https://perma.cc/AW3Q-3XXE ..................4

N.Y.C. Dep't of Health, *COVID-19: Data, Trends and Totals, Totals*, https://www.nyc.gov/site/doh/covid/covid-19-data-totals.page (last visited July 10, 2024).................4

Order of Bd. of Health (Feb. 9, 2023), https://perma.cc/LBT6-WQEJ ........................................12, 13

Order of Comm'r of Health & Mental Hygiene (Sept. 15, 2021), https://perma.cc/P2ZG-Z5R6.................5, 6, 7, 43, 45

Order of Comm'r of Health & Mental Hygiene (Aug. 24, 2021), https://perma.cc/C4W2-RFYC....................6

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

Order of Comm'r of Health & Mental Hygiene (Sept. 28, 2021), https://perma.cc/Q65Z-WJEQ ...................................................6

*Pfizer and BioNTech Announce U.S. FDA Approval of their COVID-19 Vaccine COMIRNATY® For Adolescents 12 through 15 Years of Age* (July 8, 2022), https://perma.cc/PV4W-PFLH ......................................................7, 44

## PRELIMINARY STATEMENT

As this Court is aware from prior cases, in fall 2021, the New York City Health Commissioner required employees of the New York City Department of Education (DOE) to submit proof of vaccination against COVID-19. This requirement enabled DOE to return to a full in-person instruction model, therefore restoring a semblance of normalcy to its student body after the worst of the COVID-19 pandemic. And the religious beliefs of individual DOE employes were protected through an accommodation process that allowed employees to submit proof of their sincere religious objection to receiving a COVID-19 vaccine, which DOE would accommodate unless doing so placed an undue hardship on it.

Plaintiff Stephanie Kushner, a special education DOE middle school teacher, objected to receiving a COVID-19 vaccine in fall 2021, and sought a religious accommodation exempting her from the requirement. After both DOE and the neutral arbitrator to which she appealed denied her request, and Kushner declined to pursue further administrative appeals, DOE discharged Kushner from its employment. She brought this employment discrimination action, which the district court (Irizarry, J.) dismissed for failure to state a claim. This Court should affirm.

Kushner's complaint was defective for two independent reasons. First, its allegations make clear that the belief which allegedly conflicted with the vaccination requirement was Kushner's own personal judgment that the COVID-19 vaccines needed longer-term testing to establish their safety and efficacy, rather than a religious command or prohibition. Personal safety concerns are exactly the type of beliefs that courts have routinely held to not be religious in nature and thus not constitutionally or statutorily protected. And Kushner's cursory request to amend her complaint did not identify how she could transform her safety-based personal objection into a religious one.

Second, from the face of the complaint, even if Kushner had a religious belief that conflicted with the vaccination requirement, accommodating it would have imposed an undue hardship on DOE. In the 2021-2022 school year, DOE had resumed nearly full in-person instruction due to the new availability of vaccines, and its pre-vaccination COVID-19 safety protocols would have been insufficient to protect its students and employees from the virus. This was especially true in 2021, as New York City had been hit especially hard by the pandemic, and the need for greater vaccination coverage remained urgent. Kushner, a

special education teacher for middle school students, could not have returned to the classroom unvaccinated without placing her students—for whom vaccines were not yet fully approved—and colleagues at risk.

## ISSUE PRESENTED FOR REVIEW

Did the district court correctly dismiss plaintiff's claim, where (1) she pled a safety-based personal objection to receiving a COVID-19 vaccine, not a religion-based one, and (2) on the face of the complaint, accommodating plaintiff's objection would have posed an undue hardship for DOE?

## STATEMENT OF THE CASE

**A. The well-litigated requirement that New York City public-school employees be vaccinated against COVID-19, subject to valid exceptions**

**1. The initial order of the Commissioner of Health requiring vaccination of public-school employees**

COVID-19 is a highly infectious and potentially deadly disease that "has caused widespread suffering in the State, country, and world." *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 272 (2d Cir. 2021) (per curiam), *op. clarified*, 17 F.4th 368, 370 (2d Cir. 2021), *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569, 2569 (2022). New York City has been hit particularly hard, with more than 3.5 million cases and over

3

46,000 deaths to date. N.Y.C. Dep't of Health, *COVID-19: Data, Trends and Totals, Totals*, https://www.nyc.gov/site/doh/covid/covid-19-data-totals.page (last visited July 10, 2024).

In March 2020, in response to the rapidly spreading pandemic, New York City's public schools closed to in-person instruction. *See N.Y.C. to Close Schools, Restaurants and Bars*, N.Y. Times (Mar. 15, 2020), https://perma.cc/AW3Q-3XXE. Schools remained closed through the end of the 2020 spring semester. *See From Shutdown to Reopening: A Timeline of N.Y.C. Schools Through the Pandemic*, N.Y. Times (Sept. 13, 2021), https://www.nytimes.com/2021/09/13/world/reopening-timeline-nyc-schools.html.

In-person instruction remained limited throughout the 2020-2021 school year. That school year, families could choose either virtual or hybrid instruction. *See id.* In-person instruction was delayed at the start of the school year, and was shut down again eight weeks later in early November due to rising COVID cases. *Id.* While elementary schools reopened in late November, middle schools did not reopen until late February and high schools in late March. *Id.*

For the 2021-2022 school year, the remote option was discontinued (R45). This decision reflected the widespread understanding that in-person education better served the vast majority of students, and that extended time in remote education could lead to declining academic performance. *See, e.g.*, National Center for Education Statistics, *The Condition of Education 2024 at a Glance,* https://nces.ed.gov/programs /coe/ataglance (last visited July 10, 2024) (showing fourth and eighth grade reading and mathematics performance declined from 2019 to 2022).

The full return to in-person instruction was tied to the onset of safe and effective vaccines. Indeed, public schools presented a particularly compelling need for vaccination, as children regularly have extended contact with countless people indoors. Per the Centers for Disease Control and Prevention (CDC), vaccination was "the most critical strategy to help schools safely resume full operations," and thus it recommended that educators and other school staff be "vaccinated as soon as possible." *See* Order of Comm'r of Health & Mental Hygiene 1 (Sept. 15, 2021), https://perma.cc/P2ZG-Z5R6.

5

Shortly after the first vaccine against COVID-19 received full regulatory approval for persons aged 16 or older, the Commissioner of New York City's Department of Health and Mental Hygiene (the "Health Commissioner") issued an order requiring incumbent DOE employees to submit proof of vaccination by October 1, 2021 (and new employees to submit such proof before they began working). *See* Order of Health Comm'r (Sept. 28, 2021), https://perma.cc/Q65Z-WJEQ.[1] The City's Board of Health subsequently ratified the Health Commissioner's Order. *See* 24 RCNY § 3.01(d) (authorizing Health Commissioner to take emergency action subject to later approval or rescission by Board of Health).

The Health Commissioner's original order was issued shortly before the City's public schools fully reopened for in-person instruction for the 2021-2022 school year. *See* Eliza Shapiro, *N.Y.C. Will Eliminate Remote Learning for Next School Year*, N.Y. Times (updated Aug. 23, 2021),

---

[1] The Health Commissioner first issued this requirement in August 2021, with a late September deadline for compliance, *see* Order of Health Comm'r 2 (Aug. 24, 2021), https://perma.cc/C4W2-RFYC, before restating the order and then amending that restated order. The restated order confirmed that it was not intended to prohibit reasonable accommodations otherwise required by law. *See* Order of Health Comm'r 4 (Sept. 15, 2021), https://perma.cc/P2ZG-Z5R6.

6

https://perma.cc/FSU9-GHMZ. When students returned to in-person schooling in September 2021, no vaccine had been fully approved for children under the age of 16; full regulatory approval for a vaccine for adolescents ages 12 through 15 came only in July 2022. *See* Pfizer, *Pfizer and BioNTech Announce U.S. FDA Approval of their COVID-19 Vaccine COMIRNATY® For Adolescents 12 through 15 Years of Age* (July 8, 2022), https://perma.cc/PV4W-PFLH.

As the Health Commissioner explained, "the City [was] committed to safe, in-person learning" in DOE schools, and DOE's student population included many in areas disproportionately affected by the pandemic as well as those under the age of vaccine eligibility or full regulatory approval at the time. Order of Health Comm'r 2 (Sept. 15, 2021), https://perma.cc/P2ZG-Z5R6. Since the CDC advised that vaccination was an effective tool to prevent the spread of COVID-19 and benefited both recipients and those they come into contact with, and urged schoolteachers and staff to be vaccinated against the disease, *id.* at 1, the Health Commissioner concluded that a "system of vaccination for individuals working in school settings … w[ould] potentially save lives, protect public health, and promote public safety," *id.* at 2.

7

The order led to dramatically increased vaccination rates among public-school employees: by October 2021, around 95% of DOE personnel had been vaccinated against COVID-19. Bernstein Decl. ¶ 5, *Kane v. de Blasio*, 623 F. Supp. 3d 339 (S.D.N.Y. 2022) (21-cv-07863), ECF No. 52.

### 2. The arbitration award addressing the impact of the vaccination order on public-school teachers

After the Health Commissioner issued his initial order, DOE and its employee unions attempted to negotiate the implementation of the vaccination requirement, including the availability of reasonable accommodation requests—both medical and religious—and the placement of unvaccinated employees on leave without pay. *See* Impact Award 4, *Kane v. de Blasio*, 623 F. Supp. 3d 339 (S.D.N.Y. 2022) (21-cv-07863), ECF No. 17-11. After negotiations failed to achieve consensus, the United Federation of Teachers (the "UFT") filed an impasse declaration with the Public Employment Relations Board. *Id.* The board appointed a neutral mediator to mediate between DOE and UFT, and the parties then agreed to arbitrate before the same individual when they could not resolve all issues consensually. *Id.*

8

The arbitrator's September 10, 2021, award established a process for handling religious and medical exemption requests. *Id*. at 6-12. The award contemplated a two-stage process for DOE employees to request religious or medical exemptions to the vaccination requirement. At the first stage, as would usually be the case for any request for religious or medical accommodation, a determination would be made by the DOE as the employer. *Id*. at 9-10. However, the award provided for an extra level of review: employees denied at the first stage could appeal to an independent arbitrator. *Id*. at 10-11. And employees granted a medical or religious exemption were permitted the opportunity to remain on payroll, but in no event required or permitted to enter a school building while unvaccinated, as long as the vaccine requirement was in effect. Such employees could be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions. *Id*. at 12.

The award also provided that all unvaccinated employees who had not requested an accommodation, or had requested one and been denied, would be placed on leave without pay on September 28, 2021. *Id*. at 13-15. The award went on to offer enhanced separation and extended leave

options for employees who had been placed on leave. *Id.* at 16-17. Finally, the award stated that beginning in December 2021, DOE would seek to terminate employees who were on leave without pay and had not opted into either of the enhanced separation or leave options. *Id.* at 17.

### 3. The lawsuits that have unsuccessfully sought to stop implementation of the vaccination requirement

Numerous public-sector unions and employees of DOE unsuccessfully challenged the Health Commissioner's orders in state and federal court. This Court has addressed and turned aside a variety of legal challenges that DOE employees have brought against the requirement. *See Broecker v. N.Y.C. Dep't of Educ.*, No. 23-655, 2023 U.S. App. LEXIS 30076, at *4-6 (2d Cir. Nov. 13, 2023) (summary order) (affirming dismissal of due process challenge to requirement); *Keil v. City of N.Y.*, No. 21-3043, 2022 U.S. App. LEXIS 5791, at *3-4 (2d Cir. Mar. 3, 2022) (summary order) (affirming denial of preliminary injunction against requirement on First Amendment grounds); *Kane v. de Blasio*, 19 F.4th 152, 163-67 (2d Cir. 2021) (holding requirement did not violate First Amendment on its face, but granting preliminary relief on as-applied claims); *Maniscalco v. N.Y.C. Dep't of Educ.*, No. 21-2343, 2021

10

U.S. App. LEXIS 30967, at *1 (2d Cir. Oct. 15, 2021) (summary order) (affirming denial of preliminary injunction sought on due process grounds). To address any potential as-applied First Amendment concern, the Court ordered the City to provide an extra layer of review by a Reasonable Accommodations Appeals Panel (the "Citywide Panel") for any DOE employee whose request had been denied by the process the award had created. *See Kane*, 19 F.4th at 167-70. This Court then affirmed the district court's denial of those plaintiffs' second motion for a preliminary injunction, finding that there were "no facts before it on which it could conclude that the Citywide Panel's process was irrational in any way or infected with hostility to religion." *Keil*, 2022 U.S. App. LEXIS 5791, at *11 (quotation marks and citation omitted).

New York state courts have also overwhelmingly rejected challenges to the vaccination requirement thus far. *See O'Reilly v. Bd. of Educ.*, 213 A.D.3d 560 (1st Dep't 2023), *lv. granted*, 2023 N.Y. Slip. Op. 67436(U) (1st Dep't May 23, 2023); *Clarke v. Bd. of Educ.*, 213 A.D.3d 548 (1st Dep't 2023), *lv. granted*, 2023 N.Y. Slip Op. 67457(U) (1st Dep't May 23, 2023). The state courts have likewise overwhelmingly denied challenges to denials of accommodation requests and rejected the

11

argument that DOE did not engage in a sufficient "cooperative dialogue" or interactive process with its employees. *See, e.g.*, *Bryan v. Bd. of Educ.*, 222 A.D.3d 473, 473 (1st Dep't 2023); *Lynch v. Bd. of Educ.*, 221 A.D.3d 456 (1st Dep't 2023); *Lebowitz v. Bd. of Educ.*, 220 A.D.3d 537, 538 (1st Dep't 2023); *Hogue v. Bd. of Educ.*, 220 A.D.3d 416, 417 (1st Dep't 2023).

### 4. The policy's lifting in February 2023, in response to decreasing rates of severe COVID-19 outcomes

The severity of the COVID-19 threat changed over time, in part due to the use of vaccines against the virus. While infection and hospitalization rates have fluctuated, throughout 2023 neither metric reached the alarming level of late 2021 and early 2022. *See COVID-19: Data, Trends and Totals*, *supra*. And the rate of deaths from COVID-19 in the City has declined over the same period as well. *Id.*

City policymakers have recognized and responded to the amelioration of COVID-related perils. On February 9, 2023, the City's Board of Health lifted the provisions of the Health's Commissioner's order requiring DOE staff to provide proof of vaccination to DOE. *See* Order of Bd. of Health 2 (Feb. 9, 2023), https://perma.cc/LBT6-WQEJ. It did so in part because, by February 2023, "99% of all DOE employees"

and more than half of the City's school-age population had completed a primary series of vaccination against COVID-19. *Id.* at 1. The Board of Health recognized that "high vaccination rates correlate with lower rates of hospitalization and death" and that the City's high vaccination rate had "proven effective in lessening the burden of COVID-19 on the City's healthcare system." *Id.*

## B. Kushner's deficient claim of religious discrimination

### 1. Kushner's request for an exemption from the vaccination requirement, based on her personal belief that the vaccines needed more testing

Kushner was a special education teacher at a DOE middle school (JA018). She requested an exemption from the COVID-19 vaccination requirement in September 2021, after DOE announced it (*id.*).

According to her complaint, Kushner's request stated that she observes the Jewish faith, and that she'd been taught by Deuteronomy 4:15—which she quoted as "[y]ou should be very careful to protect your life"—not to "take something in [her] body that has potential to adversely

harm [her] health" (JA018, 030).[2] The request elaborated that she "believe[d] longer term testing, as in other vaccine or drug releases, is necessary to adequately assure that the current vaccines are truly safe and effective to assure that the vaccine does not have the potential to adversely harm [her] health" (JA030).

Neither Kushner's request, nor her complaint, asserted a categorical religious opposition to the COVID-19 vaccines (or vaccines in general). Nor did she assert that her beliefs would prohibit her from receiving a vaccine that had undergone what she viewed as sufficient testing (*see generally* JA017-22, 030).

Kushner alleged that DOE denied her accommodation request on the sole ground that she'd "'failed to meet the criteria for a religious based accommodation'" (JA019).[3] She further alleged that the arbitrator denied

---

[2] The cited scriptural verse, in context, is translated as follows in the page of the Torah in the record: "[14]At the same time the LORD commanded me to impart to you laws and rules for you to observe in the land that you are about to cross into and occupy. [15]For your own sake, therefore, be most careful—since you saw no shape when the LORD your God spoke to you at Horeb out of the fire—[16]not to act wickedly and make for yourselves a sculptured image in any likeness whatever: the form of a man or woman" (JA039).

[3] This asserted basis for the initial denial of Kushner's accommodation request is directly quoted in Kushner's district court complaint (JA019) and is presumed to be true for the purposes of this appeal. DOE later said the request had been denied because it would pose an undue hardship (JA044). The denial itself is not in the record.

14

it without explanation (JA019-20). But she did not allege that she'd pursued any further appeal (JA020), such as the Citywide Panel that the City introduced. *See Kane*, 19 F.4th at 167-70. She alleged that DOE placed her on leave without pay in October 2021 and terminated her employment in February 2022 for failure to provide proof of vaccination (JA020-21). Finally, Kushner alleged that accommodating her request through use of safety protocols similar to those used in the prior school year would not unduly burden DOE, and that other teachers or DOE employees had received exemptions from the vaccination requirement (JA021-22).

### 2. The district court's dismissal of Kushner's claim on multiple grounds

After being placed on leave without pay, Kushner filed a charge of religious discrimination with the EEOC and received a right-to-sue letter (JA011; *see also* June 21, 2022, Ltr., EDNY ECF No. 3). She and Emöke Beickert, another former DOE employee, filed suit against DOE, alleging religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (JA026-028). DOE answered the complaint as

to the co-plaintiff (*see* EDNY ECF No. 14),[4] but moved to dismiss Kushner's claim on the dual grounds that her objection to the vaccination requirement was not religious in nature and that, even if it were, accommodating it would place an undue hardship on DOE (JA031-050). In her opposition, Kushner suggested in a footnote that she could amend her complaint to elaborate on her claim, without identifying what she would add in such an amendment (EDNY ECF No. 19 at 15 n.1).

The district court granted DOE's motion and dismissed Kushner's claim (JA051). The court held that Kushner's objection to the vaccination requirement was rooted in a personal concern about safety, and thus was not a religious belief (JA058). In the alternative, the court held that accommodating Kushner would have placed an undue hardship on DOE, given the risks to others if Kushner were allowed to teach in-person without being vaccinated (JA060-61) and the burdens that would come from allowing her to work remotely, given "the particularized educational needs of her special needs students" and because "DOE would be required to hire another person to be present physically in the classroom to

---

[4] Litigation over Beickert's claim, which is founded on the asserted belief that taking a COVID vaccine makes the recipient complicit in the sin of abortion, is ongoing in the district court to date (*see, e.g.*, EDNY ECF No. 37).

16

supervise these special education students" (JA062). The district court also denied leave to amend the complaint as futile (JA063).

Kushner filed a notice of appeal after the district court's opinion dismissing her claim (JA065). She then moved for entry of a partial final judgment, which the district court granted upon DOE's consent (EDNY ECF No. 29; JA064).

## STANDARD OF REVIEW
## AND SUMMARY OF ARGUMENT

Reviewing de novo, *Stadnick v. Lima*, 861 F.3d 31, 35 (2d Cir. 2017), this Court should affirm the judgment of the district court granting DOE's motion to dismiss for failure to state a claim. Although this Court must accept as true the factual allegations of the complaint and draw all inferences in favor of the plaintiffs, *id.* at 33, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And those facts must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering the allegations, this Court may also consider documents attached to the complaint or incorporated into it by reference,

17

as well as matters of which judicial notice may be taken. *See, e.g.*, *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014).

The Court should affirm based on one or both of the district court's grounds for dismissal. First, Kushner failed to plausibly allege a religious belief that conflicted with the vaccination requirement. And second, it is in any event apparent from the complaint that granting Kushner's requested accommodation would have imposed an undue hardship on DOE.

Kushner's complaint failed to allege a religious objection to the vaccination requirement, a necessary element for her religious discrimination claim. The weight of authority, including from this Court, emphasizes that concerns about vaccine safety or efficacy are personal beliefs, not religious ones, and therefore not legally protected. Here, Kushner clearly based her objection to the COVID-19 in her personal concerns about the vaccines' safety. The scriptural passage she cited did not remotely forbid her from getting vaccinated. Instead, her assessment that the vaccines lacked sufficiently rigorous testing simply made her unwilling to do so.

Kushner lacks support for the procedural objections she raises to undermine the district court's ruling here. At the outset, despite her contentions, the face of the complaint makes clear that DOE engaged in an interactive process—by reviewing her application and providing two additional layers of review of its initial decision by neutral arbiters. And, in any case, the threshold question is whether Kushner had a sincere religious belief that required accommodation—which she did not—so the Court need not examine the sufficiency of DOE's process here. Nor can Kushner show any form of estoppel, as she has not identified any inconsistency or misrepresentation on the part of DOE, or that anyone reasonably relied on any supposed misrepresentation. And the district court providently exercised its discretion, *Porat v. Lincoln Tower Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006), in denying Kushner's perfunctory request to amend her complaint.

Regardless, the district court also correctly held that DOE would have suffered an undue hardship if it had accommodated Kushner's request. From the face of the complaint, it is apparent that Kushner was seeking to be placed unvaccinated in a classroom with special education middle school students. This was inconsistent with public health

guidance that vaccination was a critical strategy to resuming normal operations, as well as DOE's plan to return to full in-person instruction for the 2021-2022 school year. Kushner's allegations about the ways in which she could have been accommodated ignored the material change in circumstances that occurred since the prior school year. She likewise ignored any differences between her role as a classroom teacher and other DOE employees, who may have been able to perform their roles safely and effectively even without being vaccinated. Accommodating Kushner, on the other hand, would have meant either placing her students and colleagues in unwarranted danger or hiring another person to supervise and support her students in the classroom, something DOE was not required to do.

## ARGUMENT

## AS THE DISTRICT COURT SOUNDLY DETERMINED, KUSHNER'S COMPLAINT FAILED TO STATE A CLAIM

The district court properly dismissed Kushner's claim of religious discrimination for failure to plausibly allege a claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. For Kushner to bring a claim of religious discrimination under Title VII, she had to plausibly allege, among other things, "a bona fide religious belief conflicting with an employment requirement." *D'Cunha v. Northwell Health Sys.*, 23-476, 2023 U.S. App. LEXIS 30612, at *6 (2d Cir. Nov. 17, 2023) (summary order) (quoting *Knight v. Conn. Dep't of Pub. Health*, 25 F.3d 156, 167 (2d Cir. 2001)). And even still, an employer is entitled to dismissal of a Title VII claim "if it can show that the prospective accommodation 'would cause the employer to suffer an undue hardship.'" *Id.* (quoting *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002)). While undue hardship is an affirmative defense, it may properly be resolved on a motion to dismiss "if the defense appears on the face of the complaint." *Id.* at *7 (quoting *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010)).

21

Kushner's allegations, taken as true—and read with documents incorporated into the complaint, as well as facts properly subject to judicial notice—failed to state a claim for two independent reasons. First, Kushner did not plausibly allege that her conflict with the COVID-19 vaccination requirement was a religious one. And second, the undue hardship that DOE—and its employees and students—would face from allowing Kushner to continue to teach without complying with the requirement is apparent even at this stage of the litigation.

**A.  The district court correctly dismissed Kushner's complaint due to the nature of her stated objection to the vaccination requirement.**

**1.  As a matter of law, Kushner's stated objection to COVID-19 vaccines is not religious in nature.**

As the district court correctly held, Kushner failed to plausibly allege that she had a religious belief that conflicted with the requirement of receiving a COVID-19 vaccine (JA058). While legal protections for religious beliefs are not limited to "traditional" religious beliefs, or those endorsed by religious authorities, *see, e.g.*, *Int'l Soc'y for Krishna Consciousness, Inc. v. Barber*, 650 F.2d 430, 439-40 (2d Cir. 1981), courts still distinguish between beliefs that are religious and those that are

22

merely personal, political, or philosophical, *see, e.g.*, *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972) (explaining that "the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests"); *Mason v. Gen. Brown Cent. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir. 1988); *Krishna Consciousness*, 650 F.2d at 433. And a litigant's "assertion that the belief" is religious "does not automatically mean" that is so; "[t]o the contrary, a threshold inquiry into the 'religious' aspect of particular beliefs cannot be avoided" in order to "determine what is in fact based on religious belief, and what is based on secular or scientific principles." *Mason*, 851 F.2d at 51 (quotation and citations omitted).

This Court and others have repeatedly held that concerns about a vaccine's safety are medical, not religious, beliefs. In *Mason*, for example, the plaintiffs sought an exemption from a requirement that their child be vaccinated to attend public school, based on their family's assertedly religious belief in "a natural existence." 851 F.2d at 50. This Court affirmed the denial of their constitutional claim because the family's beliefs were personal convictions rather than religious. *Id.* at 51-52. In drawing this distinction, the Court noted that the plaintiff father

23

articulated his concerns about vaccination in medical, scientific, and biological terms, and noted fears of side effects. *Id.* at 51.

Since *Mason*, courts in this circuit have repeatedly explained that objections to vaccination that are rooted in safety concerns are personal, not religious, beliefs and thus are not protected by federal law. *See Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp. 2d 414, 429-30 (E.D.N.Y. 2010), *aff'd*, 500 F. App'x 16, 18 (2d Cir. 2012) (summary order); *Check v. N.Y.C. Dep't of Educ.*, 13-cv-791, 2013 U.S. Dist. LEXIS 71124, at *5-7 (E.D.N.Y. 2013), *aff'd sub nom. Phillips v. City of N.Y.*, 775 F.3d 538, 543 (2d Cir. 2015). This is so even where the plaintiff is generally a religious person, if the "requisite nexus between the objection to immunization and plaintiff's religious beliefs" does not exist. *Friedman v. Clarkston Cent. Sch. Dist.*, 75 F. App'x 815, 818-19 (2d Cir. 2003) (summary order).

While the decisions cited above arose in the context of challenges to student vaccination policies, the same principle holds true in the employment context. In *Fallon v. Mercy Catholic Medical Center*, 877 F.3d 487 (3d Cir. 2017), the Third Circuit affirmed the dismissal of a complaint for religious discrimination of a healthcare worker fired for refusing to receive a flu vaccine. There, the complaint quoted a Buddhist

principle concerning the need to think independently of those in authority, and—in a passage remarkably similar to this case—alleged the resulting belief that "one should not harm their [*sic*] own body" and that "the flu vaccine may do more harm than good." *Id.* at 492. The court held that the plaintiff had not alleged a religious belief; instead, he had described medical beliefs about the safety and possible effects of the flu vaccine. *Id.* The court also observed that believing in a "general moral commandment" to avoid harming one's own body was not sufficient to establish a religious belief. *Id.* As the court noted, some individuals may indeed have religiously based objections to vaccination, but the allegations that the plaintiff brought were insufficient to state such a claim. *Id.* at 493.

Courts have applied the distinction between religious and personal medical beliefs in the COVID-19 context. *See, e.g.*, *Passarella v. Aspirus, Inc.*, 22-cv-287, 2023 U.S. Dist. LEXUS 40958, at *14-16 (W.D. Wis. Mar. 10, 2023); *DeVito v. Legacy Health*, 3:22-cv-01983, 2024 U.S. Dist. LEXIS 28475, at *6-9 (D. Or. Feb. 19, 2024) (collecting cases). While employees may claim to be religious generally and even consider their bodies to be temples, the relevant question is whether their objections to the COVID-

19 vaccine specifically were "predicated fundamentally on [their] concerns with the safety of the vaccine and [their] right to bodily integrity." *Passarella*, 2023 U.S. Dist. LEXIS 40958, at *13-14. If so, following the logic of cases such as *Fallon*, the employees' beliefs are "personal judgments about vaccine safety," rather than religious beliefs, and their Title VII claims should be dismissed. *Id.* at *14-16; *see also Petermann v. Aspirus, Inc.*, 22-cv-332, 2023 U.S. Dist. LEXIS 53779, at *5 (W.D. Wis. Mar. 28, 2023) (holding that if the employee "believed that the vaccine defiled her body because it was unhealthy or unsafe, that would be a medical objection, not a religious" one).

Here, for the same persuasive reasons, the district court correctly dismissed Kushner's claim as not based on a religious belief. While Kushner states she observes the Jewish faith and cites a passage of the Torah that she interprets as requiring her to be careful with her health (JA030), neither of those allegations brings her into conflict with the DOE's vaccination requirement. Instead, the only belief that allegedly conflicted with the vaccination requirement was Kushner's own judgment that the COVID-19 vaccines needed longer-term testing to establish their safety and efficacy (*id.*). After all, even under her own

26

expansive reading, the biblical verse she quoted would not prohibit taking the vaccine if she personally believed it was safe.

But as many courts, including this one, have held, safety concerns of the sort that Kushner states are not religious beliefs, even when litigants reference religious concepts at the same time, as she does. This is true regardless of the overall religious belief system the litigant invokes. *See, e.g.*, *Mason*, 851 F.2d at 51 (Universal Life Church); *Fallon*, 877 F.3d at 492 (drawing from Buddhism); *Caviezel*, 701 F. Supp. 2d at 418-19 (pantheism); *Passarella*, 2023 U.S. Dist. LEXUS 40958, at *5-8 (Christianity). In each case, the litigant's objection to a vaccination requirement came from their judgment about the vaccine's safety, not from a religious command or prohibition. The facts of these cases mirror Kushner's objection to the COVID-19 vaccination requirement (JA030), and her objection is likewise a personal one that is not protected by federal law.

Kushner's argument that the district court did not adequately construe the complaint's allegations in her favor (Br. for Appellant ("App. Br.") 20-24) ignores both these authorities and the text of her complaint and her incorporated accommodation request themselves. While Kushner

cited the Torah, that did not prevent the district court from considering whether the specific belief underlying her objection to the requirement was in fact religious in nature. *Mason*, 851 F.2d at 51. Kushner did not— and could not—claim that the cited passage forbids taking the COVID-19 vaccines, or vaccines generally. Rather, as her complaint and accommodation request make clear, Kushner interprets the cited scripture as empowering her to decide what is healthy and what is not (JA030), and in turn she has concluded that the COVID-19 vaccines had not been adequately researched to assure her of their safety (*id.*). But that is her personal judgment, based on secular understandings of science and research. Such beliefs are personal rather than religious as a matter of law. *Mason*, 851 F.2d at 51-52; *Fallon*, 877 F.3d at 492.

Far from undermining the district court's decision (*contra* App. Br. 20-21), the contrast between Kushner's stated objection and that of her co-plaintiff Beickert, whose claim DOE did not move to dismiss, aptly demonstrates the difference between a personal and a religious objection. Unlike Kushner, Beickert alleged a direct nexus between her religious beliefs and the COVID-19 vaccines: all of the vaccines were connected with aborted fetal cell lines. Since her religion considered abortion to be

28

murder, it would be a sin for her to "be complicit with abortion in any way," including by taking the vaccines (JA012-13). Kushner, in contrast, merely expressed her own judgment that the vaccines needed more testing before she could trust their safety (JA030). The contrast between Beickert's and Kushner's allegations starkly reveals Kushner's failure to allege a religious belief that prevented her from being vaccinated.

The district court read Kushner's complaint as favorably as necessary. Kushner's problem is that the complaint's allegations make clear that her objection is outside the realm that Title VII protects. Thus, the court properly dismissed the claim (JA058).

### 2. Kushner's procedural arguments cannot save her deficient pleading.

None of Kushner's procedural arguments merit reversing the district court's holding, either. Each argument misapplies the law, misconstrues the facts, or both.

### a. DOE conducted an adequate interactive process for Kushner's request, and any alleged failure to so would not warrant reversal in any event.

To begin, Kushner's claim that DOE did not engage in an interactive process (App. Br. 16-18) is contradicted by Kushner's own allegations. DOE considered Kushner's request and offered her multiple opportunities to pursue the initial denial of that request (JA019-20). As numerous decisions hold, this process provides a sufficient interactive process, or cooperative dialogue, in this setting. *Lynch v. Bd. of Educ.*, 221 A.D.3d 456, 458 (1st Dep't 2023); *Marsteller v. City of N.Y.*, 217 A.D.3d 543, 545 (1st Dep't 2023); *see Greenbaum v. N.Y.C. Transit Auth.*, 21-1777, 2022 U.S. App. LEXIS 22589, at *15-16 (2d Cir. Aug. 15, 2022) (summary order) (equating ADA's "interactive process" requirement to New York City Local Law's "cooperative dialogue" requirement). It's also a process that this Court has considered in multiple decisions. *See Keil*, 2022 U.S. App. LEXIS 5791, at *10-11. If anything, it was Kushner who declined to fully participate in the process by forgoing her opportunity to appeal the denial of her request to the Citywide Panel, which DOE made available to all disappointed applicants in response to an earlier case before this Court. *See Kane*, 19 F.4th at 167-70.

30

But even if DOE had not engaged in an interactive process, that alone would not merit denying its motion to dismiss because, at the threshold, her claim was secular on its face and, thus, did not trigger the protections of federal (or other) law. Indeed, Kushner cites no authority holding that failure to engage in the interactive process in a religious discrimination case necessitates denying a motion to dismiss when a plaintiff fails to plausibly allege a required element of her claim (*see* App. Br. 16-17).[5]

Further, the argument is contrary to the basic elements of Title VII religious discrimination claims. Such claims require plaintiffs to allege that they "held a bona fide religious belief conflicting with an employment requirement." *D'Cunha*, 2023 U.S. App. LEXIS 30612, at *6 (quotation marks and citation omitted).  Thus, the relevant question for

---

[5] While Kushner relies on a trial court's interpretation of the Americans with Disabilities Act (*see* App. Br. 17, citing *Picinich v. United Parcel Serv.*, 321 F. Supp. 2d 485, 511 (N.D.N.Y. 2004), even in that context this Court has declined to decide whether a party is precluded from judgment as a matter of law due solely to an alleged failure to engage in an interactive process when an accommodation is possible. *See Perkins v. City of N.Y.*, 22-196, 2023 U.S. App. LEXIS 1719, at *11 n.5 (2d Cir. Jan. 24, 2023) (summary order). And the Court has specifically held that the ADA does not impose liability for a failure to engage in an interactive process if no accommodation could reasonably have been made. *See McBride v. BIC Consumer Prods. Mfg.*, 583 F.3d 92, 100-101 (2d Cir. 2009). Kushner identifies no reason why, if an alleged failure to engage in a process is not an independent source of liability, it would nonetheless defeat an otherwise meritorious motion to dismiss.

Kushner's case is whether she had such a belief—and a supposed failure to engage in an interactive process does not answer, one way or the other, whether she did. *Cf. McBride v. BIC Consumer Prods. Mfg.*, 583 F.3d 92, 101 (2d Cir. 2009) (holding that "failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA and evidence thereof does not allow a plaintiff to avoid summary judgment unless she also establishes" the elements of the claim).

### b. The record does not support Kushner's claims of judicial or equitable estoppel.

Kushner's arguments concerning judicial and equitable estoppel are no more successful (App. Br. 18-20). Judicial estoppel requires a showing "that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 45 (2d Cir. 2015) (quotation marks and citation omitted). And the party seeking estoppel, who bears the burden of establishing all its elements, must show that the balance of equities tips in her favor. *Clark v. All Acquisition, LLC*, 886 F.3d 261, 267-68 (2d Cir. 2018).

32

Kushner can show none of these elements. First, she can point to no "prior proceeding"—instead, she relies on only the administrative step that she had to pursue in *this* proceeding before she could bring suit (*see* App. Br. 18-19). Second, DOE never took inconsistent positions throughout the pendency of this case. By Kushner's own pointed account, DOE stated at the outset, in denying her request, that she had not met the "criteria" for the accommodation she sought (JA019; *accord* App. Br. 5); and its position statement did not concede that Kushner's asserted beliefs were religious in nature (*see* JA044-50). *See United States v. Swartz Fam. Tr.*, 67 F.4th 505, 519 (2d Cir. 2023). The position statement, though it focused only on the defense of undue hardship, is, thus, not "clearly inconsistent" with contesting the prima facie elements of Kushner's claim once she filed suit. *United States v. Apple, Inc.*, 791 F.3d 290, 337 (2d Cir. 2015) (quotation marks and citation omitted).

Third, Kushner cannot show that DOE's allegedly inconsistent position was adopted by a tribunal, in any way, because Kushner's right-to-sue letter explicitly made no judgment as to whether she had a meritorious claim of religious discrimination or not, nor did it comment on DOE's arguments in its position statement (*see* EDNY ECF No. 3).

33

And fourth, Kushner cannot show that the balance of equities tips in her favor, particularly because she cannot show that she was prejudiced by DOE's alleged inconsistency. *Clark*, 886 F.3d at 267; *see also Apple*, 791 F.3d at 337. Whatever DOE wrote in its position statement, Kushner always had the burden to allege the prima facie elements of her Title VII claim—most fundamentally, that her religious belief conflicted with a work requirement. *D'Cunha*, 2023 U.S. App. LEXIS 30612, at *6. And nothing DOE wrote prevented Kushner from meeting that obligation; instead, it was Kushner's own words in her accommodation request that did so (*see* JA030).

Kushner is likewise unable to show any of the elements of equitable estoppel: (1) "a misrepresentation of fact" (2) that the other party reasonably relied on (3) to her detriment. *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001). First, DOE did not misrepresent anything to Kushner: as noted, she alleges it denied her religious accommodation request for failing to meet the criteria, and the record makes clear it never conceded otherwise. Kushner has no support for the idea that not contesting certain elements at the administrative level constituted an affirmative misrepresentation as to their validity, as

would be required for the doctrine of equitable estoppel. *See Kosakow*, 274 F.3d at 725.

Second, equitable estoppel requires a showing that the other party "reasonably" relied on the estopped party's representations to her detriment. *Id.* Kushner's alleged change in position—failing to fully allege her religious beliefs in her district court complaint (App. Br. 19)— was not reasonable. As already explained, the nexus between a sincere religious belief and an employment practice is the first and central element of any religious discrimination claim. *D'Cunha*, 2023 U.S. App. LEXIS 30612, at *6. It is self-evidently unreasonable for a plaintiff to abridge such indispensable allegations in her complaint for any reason, much less in supposed reliance on a document that didn't address that element. And third, as Kushner does not identify what allegations about her religious beliefs she would have added were it not for her supposed reliance on DOE's EEOC position statement (*see* App. Br. 19), she cannot show how any supposed reliance was detrimental.

### c. The district court providently denied Kushner's bare-bones request to amend her complaint.

Relatedly, Kushner's argument that she should have been allowed to amend her complaint (App. Br. 24-25) is deficient. Her cursory request to the district court for leave to amend, which she made in a short footnote (*see* EDNY ECF No. 19 at 15 n.1), did not explain what facts she would have added if given the chance. The district court appropriately denied that request, because Kushner had given the court no clue as to "how the complaint's defects would be cured." *Porat v. Lincoln Tower Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006). Nor does Kushner attempt to do so now (*see* App. Br. 24-25), even assuming such a failing could be cured on appeal.

And indeed, it is difficult to imagine what allegations Kushner could have added that could rehabilitate her explanation of her opposition to the vaccination requirement, which she rooted specifically in her personal judgment on the safety of the vaccines (JA030). Since it appears that no amendment could have sufficiently alleged that Kushner's belief was religious in nature—and especially since even her

counsel never identified one—denial of the request to amend as futile was well within the district court's discretion. *Porat*, 464 F.3d at 276.

In sum, none of the procedural arguments Kushner advances prevent this Court from considering the substance of her allegations. And as explained above, under the weight of precedent, Kushner has alleged an insufficient personal belief, not a protected religious one, that conflicted with the vaccination requirement. *See Mason*, 851 F.2d at 51; *Fallon*, 877 F.3d at 492.

## B. In any event, the district court also correctly held that accommodating Kushner's objection would have placed an undue hardship on DOE.

The Court need not read further to affirm. But as the district court alternatively held, Kushner's claim also failed for the independent reason that accommodating her request would have imposed an undue hardship on DOE (JA060-62). For this reason, too, affirmance is warranted.

### 1. The undue hardship on DOE in granting Kushner's request was readily apparent.

An employer does not violate Title VII for failing to accommodate an employee's sincerely held religious belief if doing so would cause it to suffer an undue hardship. *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir.

2002). Hardship is undue "when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). Determining when a hardship is undue requires taking "into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact" on the employer. *Id.* at 470-71.

Although undue hardship is an affirmative defense in Title VII cases, it may be raised in a pre-answer motion to dismiss "if the defense appears on the face of the complaint." *D'Cunha*, 2023 U.S. App. LEXIS 30612, at *7 (quotation marks and citation omitted). And this Court has made clear that Title VII "does not require [employers] to provide the accommodation that" their employees may prefer, such as "a blanket religious exemption allowing them to continue working at their current positions unvaccinated." *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 292 (2d Cir. 2021).

In the specific context of DOE's vaccination requirement, multiple state-court decisions have recognized the undue hardship allowing unvaccinated teachers in a classroom would create for DOE, the largest school system in the country. *Lynch v. Bd. of Educ.*, 221 A.D.3d 456, 457

38

(1st Dep't 2023); *Lebowitz v. Bd. of Educ.*, 220 A.D.3d 537, 538 (1st Dep't 2023). And here, much as in those cases, DOE's position statement (which Kushner incorporated by reference into her complaint (JA023)) clearly explained why it could not feasibly accommodate Kushner's exemption request without incurring a substantial burden on its educational model and budget (JA044-50).

First, as noted, DOE had returned to full in-person instruction, except for a few "medically fragile students" (JA045), to improve educational outcomes for its student population.[6] In this otherwise fully in-person environment, unvaccinated employees could not work in school buildings without posing an unacceptable risk of infection to those students, as well as families and other staff, even with safeguards like masking and testing (JA044, 048). This was especially true for teachers, who necessarily work within the close confines of a classroom (JA44).

Second, even if DOE could come up with alternative assignments performing some type of offsite administrative work, it would need to hire

---

[66] *See, e.g.*, National Center for Education Statistics, *The Condition of Education 2024 at a Glance,* https://nces.ed.gov/programs/coe/ataglance (last visited July 10, 2024); National Center for Education Statistics, *Recovery from the Coronavirus Pandemic in K-12 Education*, https://nces.ed.gov/programs/coe/indicator/toa/k-12-covid-recovery?tid=300 (last visited July 10, 2024).

replacement staff to cover the unvaccinated employees' essential in-person duties—here, teaching and supervising the students (JA048-49). As DOE explained, this solution—"[p]aying one person to do the essential functions of an employee's job while also paying the employee to do low-priority administrative work"—was "arguably unreasonable" in even a single case (JA049). But in fact, many employees were requesting a similar exemption from the requirement (a fact that Kushner alluded to (*see* JA016)), and granting those exemptions across the board would be an extremely costly proposition that would impair DOE's ability to serve its students (JA049). In fact, DOE had already begun to feel the effects as it diverted scarce resources to attempting to find suitable alternative work outside of school settings for unvaccinated employees who had shown legitimate religious and medical grounds for exemption (JA049).

Fundamentally, DOE reasonably concluded that granting Kushner an exemption from the vaccine mandate would result in her inability to perform the essential function of her position: "serving students attending school in-person" (*id.*). As DOE explained, Kushner was a school-based employee, and "her essential functions require[d] close contact with students and others in a school-setting" and doing so safely

40

(*id.*; JA044). As the district court held, Kushner's basic inability to safely teach students in person combined with the resulting drain on DOE's resources if she were assigned to an off-site role provided ample basis for DOE's denial of Kushner's accommodation request (JA060-62).

### 2. Kushner's arguments on appeal do not undermine the hardships DOE would have faced in accommodating her.

Kushner's claim that undue hardship was not apparent from the face of her complaint, because she could have been accommodated through the continuation of safety protocols that had been in place for the 2020-2021 school year (JA021-22), ignores the dramatic changes in DOE's operations from that school year to the 2021-2022 school year. Kushner asks this Court to disregard the undisputed fact that in 2020-2021, as emerging new variants spiked new cases and hospitalizations, DOE operated a hybrid school system where a large portion of students were fully remote. *From Shutdown to Reopening: A Timeline of N.Y.C. Schools Through the Pandemic*, N.Y. Times (Sept. 13, 2021), https://www.nytimes.com/2021/09/13/world/reopening-timeline-nyc-schools.html. And indeed, the in-person school year had started late, then

41

shut down in November in response to rising COVID rates, and did not resume for middle-school students for nearly three months. *Id.*

For the 2021-2022 academic year, on the other hand, it is undisputed that DOE returned to the normalcy of a nearly full in-person environment (JA045), in reliance on the availability of fully approved vaccines against COVID-19, allowing its students to resume a normal educational modality and reap the attendant pedagogical and social benefits. So while the precautions that Kushner cites from the 2020-2021 school year may have been sufficient for that school year, with its smaller in-person population and frequent closures in response to rising virus rates, they were not sufficient for a full return to in-person instruction. Nor is there any reason to think that DOE could have maintained the system for monitoring the masking and testing of unvaccinated employees indefinitely.

Instead, vaccination was necessary to permit DOE to return to its pre-pandemic functioning. While on appeal Kushner quotes the then-CDC director's remarks dating back to February 2021 (App. Br. 27-28), by August 2021 two COVID-19 vaccines had been fully approved for adult usage, and as the CDC then recognized, vaccination became the key

strategy going forward. *See* Order of Health Comm'r 1 (Sept. 15, 2021), https://perma.cc/P2ZG-Z5R6. To permit Kushner and other teachers to opt out of this crucial tool would have hindered DOE's efforts to relieve its students of the educational and social stresses of remote education, and, thus, would have placed an undue hardship on DOE and its school communities.

Kushner's other primary allegation concerning undue hardship was that other DOE employees, including teachers, received accommodations (JA022). But that does not rebut DOE's showing of undue hardship. As the district court explained, Kushner did not allege that employees who received accommodations were at all similarly situated to her, including in the reason for the accommodation (JA061-62). Some could have been employees who were not assigned to schools, or who were not assigned to interact with students in classrooms daily. Even the teachers that Kushner alleged had received accommodations may have been teaching outside of a school setting before the pandemic, which Kushner has never alleged about herself. *Cf. Loiacono v. Bd. of Educ.*, Index No. 154875/22, 2022 N.Y. Misc. LEXIS 9382, at *9 (Sup. Ct. July 11, 2022) (reversing denial of an accommodation request by a DOE teacher who already

43

served as an "at-home" instructor).[7] Even more far afield is Kushner's appellate citation to employees of other municipal or state agencies who received exemptions from vaccination requirements (App. Br. 28). Sanitation workers and court clerks are unlikely to be similarly situated to teachers for these purposes.

Indeed, Kushner's argument that the district court's undue hardship analysis was not sufficiently fact-specific (App. Br. 29-31) is backward—it is Kushner who ignores the facts of her case. Whatever the circumstances of other DOE employees, or employees in other public municipal or state agencies, Kushner was an in-classroom special education middle school teacher (JA018). That means that the core of her job was interacting in-person with her students daily. And at the time that DOE considered Kushner's accommodation request, none of the available vaccines had been fully approved for middle school aged-children. *See* Pfizer, *Pfizer and BioNTech Announce U.S. FDA Approval of their COVID-19 Vaccine COMIRNATY® For Adolescents 12 through 15 Years of Age* (July 8, 2022), https://perma.cc/PV4W-PFLH. Thus,

---

[7] Kushner does not claim that she sought to be an at-home instructor, let alone that such a role was available.

Kushner's students likely would not have had the vaccine's protection against transmission, serious illness, and death. *See* Order of Health Comm'r 1. In recognition of that fact, the arbitral award between the DOE and its teachers' union specified that teachers granted accommodations from the vaccination requirement would not be permitted into school buildings. *See* Impact Award 12, *Kane v. de Blasio*, 623 F. Supp. 3d 339 (S.D.N.Y. 2022) (21-cv-07863), ECF No. 17-11.

Nor would remote teaching—even if Kushner had requested it—have been a feasible option for her role. For one, as the district court noted, Kushner taught special education students, meaning she had students with specialized and individualized needs that would not have been best served remotely (JA062). And as DOE explained in its position statement, if Kushner were teaching remotely, DOE would have to hire someone else to supervise the students in their actual classroom (JA049). Hiring additional employees to complete Kushner's core job responsibilities surely would have been an undue hardship—all the more so when the full swath of similar applications is considered.

DOE was not required to let unvaccinated teachers like Kushner place students, as well as other DOE employees, at risk by excusing them

from the vaccine requirement. The health of the children for which it is responsible is surely a "substantial" burden in the context of DOE's overall operations. *Groff*, 600 U.S. at 468. Indeed, as attendance at public schools is compulsory, school systems such as DOE are under a mandatory duty to adequately supervise their students and avoid reasonably foreseeable injuries to them. *Mirand v. City of N.Y.*, 84 N.Y.2d 44, 49 (1994). DOE did so in part by requiring its employees be vaccinated so that they would not run an unnecessary risk of spreading COVID-19 to the school community. As such, granting Kushner's request would have forced DOE to put its students at greater risk or to hire another person to do the essential functions of her position.

*    *    *    *    *

In sum, Kushner's invocation of a scriptural passage did not transfigure her personal worries about the scientific quality of vaccine testing into a religious claim. But even if it had, her complaint and the documents it incorporated established that the accommodation she sought would have placed a substantial and undue burden on the overall context of DOE's mission.

# CONCLUSION

This Court should affirm the order on appeal.

Dated:   New York, NY
         July 10, 2024

                              Respectfully submitted,

                              MURIEL GOODE-TRUFANT
                              *Acting Corporation Counsel*
                              *of the City of New York*
                              Attorney for Appellee

                              By:  _Jesse Townsend_
                                   JESSE A. TOWNSEND
                                   Assistant Corporation Counsel

                                   100 Church Street
                                   New York, NY 10007
                                   212-356-2067
                                   jtownsen@law.nyc.gov

RICHARD DEARING
DEBORAH A. BRENNER
JESSE A. TOWNSEND
    *of Counsel*

47

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 9,102 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____
JESSE A. TOWNSEND